IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CRAIG STREET,** )<br>)<br>    **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**DRURY INNS, INC.,** )<br>)<br>    **Defendant.** ) | <br><br><br><br>**CIVIL ACTION NO. 08-700-CG-N** |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Craig Street, brought this lawsuit against the defendant, Drury Inns, Inc. ("Drury Inns"), in state court for injuries he alleges he suffered when he slipped and fell in a Drury Inns hotel lobby. The plaintiff asserts state-law claims of negligence and wantonness. Drury Inns removed the case to this court pursuant to 28 U.S.C. §§ 1332 and 1441 which grant federal jurisdiction when the parties have completely diverse state citizenships and the amount in controversy exceeds $75,000. This matter is now before this court on Drury Inns' motion for summary judgment and supporting brief (Docs. 19 & 20), the plaintiff's response (Doc. 31), and Drury Inns' reply (Doc. 33). In his response, the plaintiff concedes that summary judgement is due to be granted as to his claim of wantonness. (Doc. 31, p. 11). As to the remaining negligence claim, there are material facts in dispute and the motion is therefore due to be denied.

## FACTS

In June 2007, the plaintiff, Craig Street, his wife, and some friends and family traveled to Birmingham to watch his daughter participate in the Miss Alabama Pageant. (J. Gardner Dep., Doc. 32, Ex. 4, p. 9). During their visit, the plaintiff was staying at a Drury Inns hotel in Birmingham. (C. Street Dep., Doc. 32, Ex. 2, p. 12). On June 8, 2007, the plaintiff had left the

hotel to run some errands, and while he was gone, a "violent thunderstorm" appeared. (C. Street Dep., Doc. 21, Ex. A, pp. 12 & 18-19). Robin Street, the plaintiff's wife, described the thunderstorm as follows:

> I was in the Drury Inn sitting in the lobby. We were - it was a lot of people in the lobby. We were watching television, or the television was on. It was a - while we were sitting there, a violent thunderstorm came up. And I say violent. It was one of these that the rain is very, very heavy. You're completely soaked when you get out of the car. It's that heavy.
>
> (Robin Street Dep., Doc. 21, Ex. B, p. 9).

The rainfall lasted approximately twenty-five to thirty minutes. (C. Street Dep., Doc. 21, Ex. A, p. 30; J. Garner Dep., Doc. 32, Ex. 4, p. 14).

Once the violent part of the storm had passed, the plaintiff walked through the parking lot of the Drury Inn, underneath an awning, through a set of sliding glass doors, a foyer area, a second set of sliding doors, and then into the lobby. (C. Street, Doc. 21, Ex .A, pp. 22-23; R. Street Dep., Doc. 32, Ex. 3, p. 13). The majority of the foyer area between the two sets of sliding glass doors is carpeted. (J. Daffin Aff., Doc. 21, Ex. D, ¶ 3). The plaintiff described the lobby area as having a "shiny marble-type" floor with a "dark medium color" made up of "tile-like squares." (C. Street, Doc. 21, Ex. A, pp. 30 & 62).

Billy Shields testified that the plaintiff, upon entering the lobby, was already "very wet" and that "[the plaintiff's] shorts and shirt were both wet, yes sir, physically wet." (Billy Shields Dep., Doc. 21, Ex. C., pp. 14, 16-17). As the plaintiff entered the lobby, he took only three or four steps and then turned toward where his family was sitting. As he turned to change directions, his right foot slipped and he fell. (C. Street Dep., Doc. 32, Ex. 2, p. 25; Billy Shields Dep., Doc. 32, Ex. 5, p. 24). As a result of the fall, the plaintiff alleges he has suffered several

physical injuries.

The plaintiff's wife testified that, prior to seeing the plaintiff fall, she saw people, who were soaking wet, coming in the doors. (R. Street Dep., Doc. 32, Ex. 3, p. 15). Approximately fifteen minutes prior to the plaintiff entering the lobby, Billy Shields, a family friend, and the plaintiff's wife saw a Drury Inns employee use a towel to mop up the floor with his foot and thereafter push the towel over to the side of the sliding doors. (R. Street Dep., Doc. 32, Ex. 3, pp. 14, 19, & 26; B. Shields, Doc. 21, Ex. C, pp. 13-14). After the employee mopped the floor, the plaintiff's wife noticed that people continued to come into the hotel. (R. Street Dep., Doc. 32, Ex. 3, p. 33). In sum, Billy Shields maintained "a large amount of foot traffic" was "passing through the lobby," and that it was "between fifteen and twenty-five people." (B. Shields Dep., Doc. 21, Ex. C, p. 20).

Billy Shields testified that during this time no Drury Inn employee or maintenance person ever issued any type of warning regarding the fact that the floor was wet. (B. Shields Dep., Doc. 32, Ex. 5, p. 31). Furthermore, although the Drury Inns hotel had wet floor warning signs in their possession, the plaintiff's wife saw that these signs were located behind a set of curtains by the windows. (R. Street Dep., Doc. 3, Ex. 3, p. 27). Drury Inns admits that it purchases wet-floor warning signs for their individual hotels and that employees are supposed to use these cones after they mop up the floor or to notify patrons of a hazard when the area can not be immediately cleaned up. (S. Harvey Dep., Doc. 32, Ex. 6, p. 13).

Joyce Garner, who was not present at the time of the plaintiff's fall, testified that prior to the incident there was water on the lobby floor that appeared to be tracked in by luggage, feet and umbrellas. ( J. Garner Dep., Doc. 32, Ex. 4, p. 17; C. Street, Doc. 32, Ex. 2, p. 15). When

asked about the quantity of water in the area in which the plaintiff fell, Ms. Garner testified as follows:

> Q: Describe for me the water you observed on the floor. Or on the lobby floor.
> A: It was just very wet. Very wet.
> Q: Can you quantify very wet into any...
> A: A quantity? Like inches?
> Q: Was it droplets of water, or was there puddles or pools of water...how would you describe it?
> A: No, it was wet. Not droplets. Very wet right at the entry area.
> ...
> Q: I'm just trying to picture your testimony in my–
> A: I understand, and I am trying to give you an idea. It was an area – a large area of water, you know, wet, wet.
> ...
> A: I agree that there was a lot of water.

(J. Garner Dep., Doc. 32, Ex. 4, pp. 21-22).

Moreover, Billy Shields testified that the water was consistent with what would be tracked in by people walking into the hotel. (B. Shields Dep., Doc. 21, Ex. C, p. 26). In describing the specific amount, Mr. Shields testified that "there was enough water to fully place your foot in, puddle sizes that one could put an entire shoe on. Beyond that there wasn't a pool of water anywhere, but there were puddles large enough to step in." When asked how many puddles there were, Mr. Shields testified "[n]o more than three or four." (B. Shields Dep., Doc. 32, Ex. 5, pp. 25-26). When asked how large of an area these puddles were located, Mr. Shields testified that in the lobby area of approximately 15 feet, the puddles were located in approximately a five foot radius at the entranceway of the hotel. (B. Shields Dep., Doc. 32, Ex. 5, pp. 26-28).

On the other hand, the plaintiff testified that he did not notice any water on the floor when he walked into the lobby of the hotel or right before he fell. (C. Street Dep., Doc. 21, Ex.

A, pp. 29, 32, 70-71).  The plaintiff's wife was also unable to testify as to how much water was on the floor prior to the plaintiff's fall.  (R. Street Dep., Doc. 21, Ex. B, p. 26).  However, the plaintiff did notice water after he fell::

> Q: How much water was on the floor where you fell?
> A: There was a good bit of water on the floor.
> Q: Try to quantify a good bit for me.
> A: My clothing was extremely wet from subsequently collapsing on the floor, and after I got up and looked around, I could see water, looking directly over it.
> Q: Okay. When you looked down directly over it, was it drops of water from people coming in? Were there big puddles of water? How would you describe the–
> A: There were not puddles, but it was a fairly large area and I, by my size, naturally falling on the floor, wiped up a good bit of the water.
> ...
> Q: Was the water just in the area where you fell or how far to the sides of you was the water?
> A: To the side I would say, you know, an area of five or six feet.

(C. Street Dep., Doc. 32, Ex. 2, pp. 31-32).

Mr. Shields also noticed when he came to the plaintiff's aide that there was "a lot of water on the ground."  (B. Shields Dep., Doc. 32, Ex. 5, p. 25).  He also noticed that the plaintiff was very wet on his right side which suggested to him that there was a lot of  water on the ground.  (Id., p. 15).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere

existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material

issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### B. Plaintiff's Negligence Claim

The evidence presented by the plaintiff and Drury Inns establishes that the plaintiff was a business invitee upon Drury Inns' premises at the time of the accident, and, as such, Drury Inns owed him a duty to exercise reasonable care in maintaining a reasonably safe premises for the use of its customers; or, if the premises were in a dangerous condition, Drury Inns was obligated to give sufficient warning so that the plaintiff might avoid danger by the use of ordinary care. See Cuevas v. W.E. Walker, Inc., 565 So.2d 176, 177 (Ala. 1990); Boudousquie v. Marriott Management Services Corp., 669 So.2d 998, 1000 (Ala.Civ.App. 1995).[1] In these type of cases,

---

[1] This case was removed to this court on the basis of diversity jurisdiction, thus the laws of the State of Alabama apply. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)(holding that a federal court sitting in diversity must apply the choice of law rules of the forum state).

7

> The storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. No presumption of negligence arises from the mere fact of injury to the customer. The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees. Actual or constructive notice of the presence of the offending substance must be proven before the proprietor can be held responsible for the injury.

Cash v. Winn-Dixie of Montgomery, Inc., 418 So.2d 874, 876 (Ala. 1982); see also Dolgencorp, Inc. v. Hall, 890 2d 98, 101 (Ala. 2003); Fowler v. CEC Entertainment, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005).

Since it is uncontradicted that Drury Inns had actual notice of the presence of the rain water, "[t]he question then is whether under the circumstances the defendant breached [its] duty of reasonable care." Terrell v. Warehouse Groceries, 364 So.2d 675, 676 (Ala. 1978). Under Alabama law, "where the foreign substance is rain water tracked in by customers and in the absence of unusual accumulations, due care does not require that a storekeeper keep the floor completely free of water." Since "[w]hen it rains, surfaces naturally become more slippery than usual," the customer should be "sufficiently familiar" with this fact. Therefore, "[t]o require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care" and thus "make him an insurer of the customer's safety." However, "each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings." Id. at 677.

In the instant case, it is undisputed that the substance on the floor of the lobby was rain

water. However, Drury Inns contends that the evidence presented by the plaintiff does not rise to the level of indicating a breach of a duty owed by Drury Inns to its invitees because (1) there was not an unusual accumulation of rainwater or other circumstances that would require it to take affirmative measures; and (2) assuming that this duty did arise, it exercised due care by taking such affirmative measures.

First, Billy Shields testified that "there was enough water to fully place your foot in, puddle sizes that one could put an entire shoe in." (B. Shields Dep., Doc. 32, Ex. 5, pp. 25-26). Furthermore, the plaintiff testified that his "clothing was extremely wet from subsequently collapsing on the floor". (C. Street Dep., Doc. 32, Ex. 2, pp. 31-32). This testimony regarding the amount of water on the floor creates a factual question as to whether there was an "unusual accumulation of rainwater" that would require affirmative measures by Drury Inns. As a result, this court finds the evidence, viewed in a light most favorable to the plaintiff, does not establish as a matter of law that Drury Inns is free of negligence.[2] Boyd v. Wal-Mart Stores, Inc., 710 So.2d 1258, 1260 (Ala.Civ.App. 1997)("What constitutes an 'unusual' accumulation of water is a fact question that should be answered by the jury."); see Strahsburg v. Winn-Dixie Montgomery, Inc., 601 So.2d 916, 919 (Ala. 1992)(denied a directed verdict in part because the plaintiff testified that there was a lot of water on his pants after he fell).

Furthermore, even though Drury Inns asserts that it took affirmative measures to provide

---

[2] Drury Inns' reliance on Terrell v. Warehouse Groceries, 364 So.2d 675 (Ala. 1978) is misplaced. Unlike that case, where the customer had fallen at the end of the main aisle of the store approximately 25 or 30 feet from the front entrance, the water went only halfway up the aisle, and the plaintiff's daughter, who was the only witness to the plaintiff's fall, testified that she did not notice any water where the plaintiff fell until after the fall, the plaintiff in the present case fell at the entrance of the hotel and there were two witnesses who testified that they noticed water had accumulated in the area prior to the incident.

reasonable safeguards for guests, (Doc. 20, pp. 15-16; Doc. 33, pp. 9-11), the plaintiff correctly points out that Drury Inns failed to use their "warning wet floor" signs at the time of the incident despite the fact that the company has a policy to use such signs and that the signs were readily available at the time of the incident. (See Doc. 31, p. 9).  In light of this, this court concludes that a reasonable jury could conclude that Drury Inns did not exercise due care in tending to the rainwater on the floor of the lobby.  Boyd v. Wal-Mart Stores, Inc., 710 So.2d 1258, 1260 (Ala.App.Ct. 1997)("whether [the shopkeeper] exercised due care in tending to the accumulation of rainwater is... a question of fact for the jury); see Strahsburg, 601 So.2d at 919(directed verdict in favor of the shopkeeper was not appropriate despite the fact that the store used a mat at the entrance of the store and utilized additional safety precautions because there was conflicting evidence as to whether warning signs were in place when the plaintiff fell); King v. Winn-Dixie of Montgomery, Inc., 565 So.2d 12 (Ala. 1990)(holding that summary judgment could not be entered in the shopkeeper's favor because an issue existed as to whether the defendant grocery store should have discovered a water hazard purportedly caused by tracked-in rain and whether the store should have mopped up the area prior to the plaintiff's accident at the entryway of the premises despite the fact that the store utilized a mat at the entrance of the store); Neel-Gilley v. McCallister, 753 So.2d 531, 533 (Ala.Civ.App. 1999)(held that summary judgment for the shopkeeper was not appropriate despite the fact that entrance to the front door was covered by a canopy; indoor/outdoor carpet covers a ramp leading from the parking lot to the entrance; and that the owner's wife inspected the floor where the plaintiff fell approximately 10 to 20 times prior to the incident.).

**C. Contributory Negligence**

Drury Inns makes an alternative argument that the plaintiff is barred from recovering against it "because his own negligence contributed to his injuries." (Doc. 20, p. 17). Under Alabama law, "a plaintiff cannot recover in a negligence suit where plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant." Brown v. Piggly-Wiggly Stores, 454 So.2d 1370, 1372 (Ala. 1984)(citing Alabama Power Co. v. Scholz, 283 Ala. 232, 238, 215 So.2d 447 (Ala. 1968)). Although the "question of contributory negligence is normally one for the jury", "where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law." In order "[t]o establish contributory negligence as a matter of law, a defendant seeking a summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." Tell v. Terex Corp., 962 So.2d 174, 177 (Ala. 2007)(quoting Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 839 (Ala. 2002)) (internal quotation marks omitted). In showing that the plaintiff had a conscious appreciation, "[i]t is enough if the plaintiff understood, or should have understood, the danger posed." Serio v. Merrell, Inc., 941 So.2d 960, 965 (Ala. 2006)(citing Ridgeway v. CSX Transp., Inc., 723 So.2d 600, 606 (Ala. 1998)).

Drury Inns argues that the plaintiff should have known that the floor would be slippery after a rain storm. Drury Inns is correct that "the Alabama Supreme Court has noted that 'when it rains surfaces naturally become more slippery than usual - a fact with which a customer is sufficiently familiar'" (Doc. 20, p. 18)(quoting Terrell, 364 So.2d at 677), and Drury Inns is also correct that "it is reasonable for a person to understand that water would be on the floor after a

hard rain." (Id.). However, it is not reasonable for this court to conclude that a person naturally appreciates, without any other type of warning, that an "unusual accumulation" of rain water would form on a floor of a hotel lobby. Since this court has determined that there is a factual question as to whether there was an "unusual accumulation" and since it is undisputed that Drury Inns did not place any warning signs in the lobby, this court finds that a reasonable jury could also conclude that the plaintiff should not have an appreciation of such a condition.

### D. Open and Obvious

Drury Inns also asserts that "the water on the floor was open and obvious and had the Plaintiff been exercising reasonable care, would have been discovered by the Plaintiff." (Id. at p. 20). In Alabama, "'as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care.'" Bogue v. R & M Grocery, 553 So.2d 545, 547 (Ala. 1989)(citation omitted). However, the Alabama Supreme Court has "held that a summary judgment is proper on the issue of whether a defect was open and obvious when the undisputed evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger." Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala. 1993)(emphasis in original).

Viewing the facts in a light most favorable to the plaintiff, this court cannot proclaim that the rain water on the lobby floor was such an open and obvious hazard that the plaintiff's claim should not go forward. It would appear that the plaintiff entered the lobby without noticing the water or any other "hidden" danger in the aisle. In fact, the plaintiff testified that he did not notice any water on the floor when he walked into the lobby of the hotel or right before he fell.

(C. Street Dep., Doc. 21, Ex. A, p. 29, 32, 70-1).

Under the present facts, this court sees no reason why a reasonable jury could not find that defendant was negligent nor that the hazard was open and obvious. Thus, questions of material fact preclude the grant of summary judgment of plaintiff's negligence claim.

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth herein, the court finds that the defendant's motion for summary judgment (Doc. 19) is **GRANTED** as to the plaintiff's claim of wantonness but **DENIED** as to plaintiff's claim of negligence.

**DONE and ORDERED** this 18th day of November, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE